UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

**NICOLE AVERETTE**                                                    **CIVIL ACTION**

**VERSUS**                                                                  **NO. 13-05968**

**BAYER HEALTHCARE**
**PHARMACEUTICALS INC.**                                    **SECTION C (5)**

ORDER AND REASONS

This matter comes before the Court on motion to dismiss pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6) filed by Bayer Healthcare Pharmaceuticals Inc. ("Bayer"). Rec. Doc. 4. Having reviewed the record, the memoranda of counsel and the law, the Court rules as follows.

**I. Background**

Bayer produces and markets the contraceptive device Mirena—an intrauterine device made of flexible plastic that requires insertion by a healthcare provider. Rec. Doc. 1, pp. 2-3. Once implanted, the device releases levonorgestrel, a synthetic progestogen, directly into the uterus. Rec. Doc. 1, p. 3. The exact mechanism by which levonorgestrel prevents pregnancy is unknown. *Id.* Bayer provides various warnings to potential users of Mirena, including the warning that it may be difficult to carry a child to term after its use, that migration of the plastic device may occur if the uterus is perforated during insertion, and that the system must be replaced every five years. *Id.*

Plaintiff, Nicole Averette ("Averette"), is a resident of Louisiana and had a Mirena device implanted by her physician on May 3, 2007. Rec. Doc. 1, p. 5. Plaintiff claims that shortly after the placement of the device she experienced severe abdominal pain, cramping, and heavy bleeding,

1

which caused her concern about the device. *Id.* On May 10, 2011,[1] Averette's physician attempted to remove the Mirena device but was unsuccessful. *Id.* at 6. On July 1, 2011, Averette's physician performed a hysteroscopy to remove the device. *Id.* As a result, Averette filed this lawsuit on September 9, 2013, invoking the Court's diversity jurisdiction. *Id.* at 1. Averette presents claims under the Louisiana Products Liability Act ("LPLA") as well as under theories of negligence, failure to warn, breach of implied warranty, breach of express warranty, negligent misrepresentation, fraudulent misrepresentation, and concealment. Rec. Doc. 1, p. 6-16.

Bayer moves to dismiss pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6), arguing that Averette's claims have prescribed, that she is limited to claims arising under LPLA, that she has failed to state a claim under LPLA, and that punitive damages are not available under LPLA. Rec. Doc. 4, pp 1-2. Averette concedes that a one-year prescriptive period applies to her claims, that LPLA provides the exclusive theory of liability for her claims, and does not oppose dismissal of her punitive damage claims. Rec. Doc. 8, pp. 3-4. Accordingly, Averette's claims of negligence, failure to warn, breach of implied and express warranty, negligent misrepresentation, fraudulent misrepresentation, concealment and her claim to punitive damages are DISMISSED.

## II. Legal Standards

### a. Standard of Review

Under Federal Rule of Civil Procedure 8(a), a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. A "short

---

[1] In opposition, Averette explains that the four year delay between the time she first experienced symptoms from the Mirena device and its removal was due to financial constraints. Rec. Doc. 8, p. 1.

2

and plain statement" need not contain detailed factual allegations but demands more than unadorned accusations of harm. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009). If the claim fails to state grounds upon which relief could be granted, a court may dismiss the claim under Federal Rule of Civil Procedure 12(b)(6) on motion by a party. In order to survive a motion to dismiss, a claim must not only be conceivable, it must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). When analyzing a claim's plausibility, the Court takes all factual allegations in the complaint as true and makes all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). This Court cannot dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) unless it appears beyond a doubt that the plaintiff cannot prove a plausible set of facts that would support her claim and entitle her to relief. *Harris v. H20 Spa & Salon*, No. 07-1618, 2007 WL 2571937, at *2 (E.D.La. Aug. 31, 2007).

### b. Louisiana Products Liability Act

The Louisiana Products Liability Act "establishes the exclusive theories of liability for manufacturers for damages caused by their products." La. Rev. Stat. Ann. § 9:2800.52. A plaintiff may not recover from a manufacturer for damages incurred by the use of a product based on any liability theory not set forth in the LPLA. *See id.* The LPLA provides that a manufacturer of a product is liable to a claimant for damage "proximately caused" by a characteristic of the product that rendered it "unreasonably dangerous" when the damage arose from a reasonably anticipated use of the product by the "claimant or another person or entity." *Id.* at § 9:2800.54A. A claimant may prove that the product was "unreasonably dangerous" only if it was unreasonably dangerous: (1) in construction or composition; (2) in design; (3) because of inadequate warning; or (4) because of nonconformity to an express warranty. *Id.* at § 2800.54(B)(1-4). Thus, the elements of a products

liability cause of action under the LPLA are satisfied by proof of the following: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else. *Jefferson v. Lead Indus. Ass'ns*, 106 F.3d 1245, 1251 (5th Cir. 1997); La. Rev. Stat. Ann. § 9:2800.54.

Although the various ways of establishing that a product is unreasonably dangerous under LPLA are predicated on principles of strict liability, negligence, or warranty, these are no longer viable independent theories of recovery against a manufacturer. *Jefferson*, 106 F.3d at 1251 (citing *Automatique New Orleans, Inc. v. U-Select-It, Inc.*, 1995 WL 461151 at *3 n.2 (E.D.La. Aug. 15, 1995) (no independent negligence claim); *Hopkins v. NCR Corp.*, 1994 WL 757510 at *1-2 (M.D.La. Nov. 17, 1994) (strict liability under article 2317 not cognizable theory against manufacturer); Kennedy, *supra*, at 589-90). "Further, breach of implied warranty or redhibition is not available as a theory of recovery for personal injury, although a redhibition action is still viable against the manufacturer to recover pecuniary loss." *Jefferson*, 106 F.3d at 1251; Kennedy, *supra*, at 588.

### III. Prescription

As noted above, Bayer argues and Averette concedes that a one-year prescriptive period applies to her LPLA claims. Rec. Doc. 10-2; p. 2; Rec. Doc. 8, p. 3; *see also Guidry v. Aventis Pharm., Inc.*, 418 F. Supp. 2d 835, 839 (M.D.La. 2006) (citing La. Civ. Code Ann. art. 3492). "This prescription [for delictual actions] commences from the day injury or damage is sustained." La. Civ. Code Ann. art. 3492. Although prescription begins to run from the day injury or damage is

sustained, damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support the accrual of a cause of action. *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 527 (5th Cir. 1995). Bayer asserts that prescription began to run shortly after the Mirena device was inserted when Averette became "concerned that the Mirena IUD was the source of her pain." Rec. Doc. 4-1, p. 3; Rec. Doc. 1, p. 5. Averette claims that the prescriptive period runs instead from the date when she became aware that the Mirena device was defective—upon viewing an advertisement alerting Mirena users to a possible claim against Bayer in early 2013. Rec. Doc. 8, p. 3. Averette argues that, although she experienced health problems after inserting the device, she attributed those problems to her belief that "she was not personally meant to have a Mirena IUD." *Id.* Although citing no law in support, Averette appears to be invoking the Louisiana doctrine of *contra non valentem*.

The doctrine of *contra non valentem* is a judicially-created exception to the prescription statutes. *Wimberly v. Gatch* No. 93-C-2361 (La. 4/11/94); 635 So.2d 206, 211. The "basic principle of the doctrine . . . is equity. The principles of equity and justice form the mainstay of the doctrine and demand suspension when the plaintiff is effectively prevented from enforcing his rights for reasons external to his own will . . . ." *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 885 (5th Cir. 2002). The doctrine is applied in cases that fall into one of four categories, one of which is relevant to this case: "Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Wimberly*, 635 So.2d at 211. The Fifth Circuit has characterized this exception by saying that "in cases involving latent injury, the cause of action accrues when damages are first suffered, but the prescription period does not run until such time as a reasonable plaintiff would become aware of the connection between her

5

injured condition and the defendant's tortious actions." *Grenier v. Medic. Eng'g Corp.*, 243 F.3d 200, 204 n.2 (5th Cir. 2001).

There are two Louisiana appellate court cases that are particularly relevant to this case in that they apply *contra non valentem* to situations in which a patient has knowledge of the cause of her injury but claims to have been unaware that the cause is due to a tortious act. The Court is mindful that medical problems are unique in that it is often difficult to trace them to a single cause and that patients must often receive treatment without knowing how or why the problem developed. This was certainly the case in *Hoerner v. Wesley-Jensen, Inc.*, where the plaintiff developed an eye infection ultimately resulting in the need for a corneal transplant. No. 95-CA-0553 (La. App. 4 Cir. 11/20/96); 684 So.2d 508, 509 (*appeal denied*, No. 96-C-30347 (La. 2/7/97); 688 So.2d 501). The plaintiff in *Hoerner* argued against the prescriptive period running from the date of her corneal transplant, claiming that she was unaware at the time that her extended-wear prescription contact lenses were the cause of her infection. *Id.* at 510. The plaintiff "believed that she was the unfortunate recipient of an ubiquitous germ like one who contracts measles or a cold." *Id.* The Court of Appeal of Louisiana for the Fourth Circuit found that the plaintiff was not put on notice of any fault of the contact lens manufacturer until she read an article on the increased likelihood of infection in users of extended-wear contact lenses. *Id.* at 514.

In a similar case, the same court provided a different result. *Mitich v. Cordis Mfg. Co.*, 607 So.2d 955, 956 (La. App. 4 Cir. 1992). The plaintiff was the eleven-year-old recipient of a pacemaker. Three years after it was implanted, the pacemaker was removed because the batteries had depleted, in spite of the fact that the parents had been told the pacemaker would last a lifetime. Five years after the pacemaker was replaced, the plaintiff's mother read an article reporting that the

defendant sold defective pacemakers containing corrosion-prone batteries. *Id.* Reasoning that prescription runs from the time when there is "notice enough to excite the plaintiff's attention and put her on guard to prompt further inquiry," the court held that the prescriptive period began when the pacemaker required replacement much earlier than expected. *Id.*

In the present case, Averette claims that she knew shortly after the Mirena system was implanted that it was causing her medical problems. Even considering the facts in favor of Averette, including that she believed her injuries to be the result of some personal incompatibility with the device, she has failed to show that she was not reasonably put on notice when she began experiencing her symptoms or at the very least, when she finally had the device removed over four years later. Unlike the plaintiff in *Hoerner*, Averette knew that her symptoms were caused by the Mirena device rather than by some other harm present throughout the environment and experienced by those who were not using the Mirena device. 638 So.2d at 514. It would be unreasonable to argue that notice was sufficiently present for Averette to seek medical attention, request that the device be removed, and ultimately have the device surgically removed, but not sufficiently present to prompt further inquiry into the presence of a possibly tortious act within the one-year prescriptive period. Averette first became concerned that the Mirena device was causing her pain, cramping, and heavy bleeding shortly after it was implanted on May 3, 2007. Rec. Doc. 1, p. 5. She had the device removed over four years later on July 1, 2011. *Id.* at p. 6. However, this claim was not filed until September 27, 2013. *Id.*

7

Accordingly, the defendant's motion to dismiss is GRANTED.

New Orleans, Louisiana, this 25th day of March, 2014.

											_____
											HELEN G. BERRIGAN
											UNITED STATES DISTRICT JUDGE